

# NUMBER 13-20-00413-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                          Appellant,

v.

ERIC SCARBERRY,                                              Appellee.

### On appeal from the 156th District Court of Bee County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Benavides**

The State appeals from the trial court's order granting the suppression of certain items of evidence in Eric Scarberry's criminal case. By two issues, the State argues the trial court erred by granting Scarberry's motions to suppress on the grounds that (1) the search warrant violated Article 18.04(5) of the Texas Code of Criminal Procedure, and (2)

Scarberry's statements were obtained in violation of *Miranda* and Article 38.22 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC ANN. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436, 498 (1966). We affirm in part and reverse and remand in part.

## I. BACKGROUND

On July 25, 2019, Scarberry was indicted on one count of burglary of a building with intent to commit theft and one count of theft, both state jail felonies alleged to have occurred at Coastal Bend College in Beeville, Texas. *See* TEX. PENAL CODE ANN. §§ 30.02, 31.03. An attorney from the Bee County Regional Public Defender entered her appearance as attorney of record for Scarberry on June 25, 2020. She then filed two motions to suppress on July 28, 2020. The first motion requested suppression of certain evidence due to a faulty search warrant. Specifically, Scarberry alleged that the warrant issued was invalid because: (1) the supporting affidavit did not reflect sufficient probable cause to justify the issuance of the search warrant; and (2) the warrant failed to comply with Article 18.04(5) of the Texas Code of Criminal Procedure, which requires the magistrate's name to appear in clearly legible handwriting or in typewritten form with the magistrate's signature. *See* TEX. CODE CRIM. PROC. ANN. arts. 18.01(b), 18.04(5).

The second motion requested the suppression of any oral statements Scarberry purportedly made to law enforcement on the grounds that the statements were involuntary and taken in violation of Article 38.22 of the Texas Code of Criminal Procedure. *See id.* art. 38.22. The motion also asserted that admission of the statements would violate Scarberry's statutory and constitutional rights.

On August 20, 2020, the trial court held a hearing on Scarberry's motions to suppress. At the hearing, the search warrant and corresponding affidavit were admitted into evidence, and the court heard argument concerning the warrant's propriety. After hearing argument, the trial court stated, "The only problem—honestly, the only problem I see with this search warrant are the signatures, and if that's enough to find that that search warrant is invalid then—then that's where you win."

The trial court also heard testimony and argument concerning the oral statements Scarberry allegedly made to police. Detective Adam Levine of the Bee County Sheriff's Office testified that he could not remember on what day or at what time Scarberry made the statements at issue. He also did not record the statements. However, he did include their substance on an undated supplemental incident report. Levine could not remember when he completed the report, but he affirmed it was not made contemporaneously with his conversation with Scarberry.

Scarberry's and Levine's accounts differed concerning the nature of their conversation. Scarberry testified that he was in his cell and was informed that Levine wanted to speak to him. Scarberry was brought into an interview room where Levine was waiting for him. According to Scarberry, when he walked into the room, Levine immediately said, "[T]his isn't about the case that [Scarberry was] in jail for." Scarberry testified that Levine asked about an unrelated incident and denied making any incriminating statements whatsoever. Scarberry also testified about an interaction he had with the Chief of Police at Coastal Bend College, Kevin Behr:

[T]he only time I actually talked to Mr. Behr is when I got arrested when I went over there to talk to him and they arrested me and he came—he came

3

to me and said if I wanted to make a statement he would come back for me later on.

Levine's own testimony concerning what he asked Scarberry varied. Initially, Levine stated that he approached Scarberry at the Bee County Jail and:

> I asked him if he wanted to have the opportunity—or I told him he would be given the opportunity to talk to Chief Behr about his case since I'm really not too involved with the investigation. I just assisted Chief Behr with some interviews. And I told him he would have the opportunity to tell his side of the story. And that was—I didn't ask him any questions about the case or anything like that.

Levine then went on to state that he "asked [Scarberry] if he wanted to have the opportunity to present his side of the story to [Behr]." Levine later confirmed that his question was whether Scarberry "wanted to give a statement to Chief Behr about the Coastal Bend College burglary," but he also acknowledged that he simply asked if Scarberry "wanted to give a statement." Levine also testified that it is "not uncommon" for him to approach people in custody and ask if they want to give a statement about the crime for which they have been arrested.

Regardless of the substance of his inquiry, Levine testified that Scarberry initially declined to give a statement, then proffered a partial admission, and then reiterated that he did not wish to discuss the matter further with law enforcement. Specifically, Levine testified:

> I was just going to say that to save anyone who is in custody, the jail staff, everyone else's time, we ask them if they wish to provide a statement. He chose not to. That was the end of it, other than the comment that he made, and that was after I asked him if he wanted to talk to Chief Behr.

Levine affirmed that *Miranda* warnings were not administered.

4

The trial court granted both motions to suppress. The trial court also issued findings of fact concerning the search warrant. The trial court found that "the Search Warrant and Affidavit were made in good faith . . . and . . . the affidavit fully and accurately described the location to be searched with adequate specificity to locate the property on the ground." The trial court also found "that there was probable cause for the search, and under the apparent authority of the Search Warrant, that said search was conducted in good faith." However, the trial court ultimately found that "the magistrate's name was not in 'clearly legible handwriting or in typewritten (or printed) form with the magistrate[']s signature'" and therefore concluded that "the Search Warrant is invalid and . . . the property recovered through the execution of the Search Warrant must be suppressed at trial."

This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5). We abated this case so that the trial court could make findings consistent with *Vasquez v. State* on the voluntariness of Scarberry's oral statements to Levine. *See id.* art. 38.22, § 6; *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013) ("[W]ritten findings are required in all cases concerning voluntariness. [Article 38.22, § 6] has no exceptions."). The trial court issued the following findings of fact:

1. The Defendant Eric Scarberry was incarcerated in the Bee County Jail for the offenses alleged in the indictment in this cause.

2. At some point during Defendant Eric Scarberry's incarceration, Detective Adam Levine approached the Defendant at the Bee County jail and inquired if he would be willing to make a statement to law enforcement about these offenses.

3. Defendant Eric Scarberry told Detective Levine that he did not desire to make a statement. According to Detective Levine, the Defendant

5

Eric Scarberry then went on to make admissions saying that he had been involved in the offense but that he did not want to discuss it further or give an interview to law enforcement.

4. Prior to his conversation with Defendant Eric Scarberry, Detective Adam Levine failed to give the Defendant the warnings mandated by Miranda v. Arizona or Article 38.22, Sec. 3 of the Texas Code of Criminal Procedure.

5. Prior to his conversation with Defendant Eric Scarberry, Detective Adam Levine failed to get permission from the Defendant's court-appointed attorney, . . . to have a conversation with the Defendant.

6. Detective Adam Levine failed to record his in-custody conversation with Defendant Eric Scarberry in accordance with the requirements of Article 38.22, Sec. 3, Texas Code of Criminal Procedure.

7. Prior to or during his custodial conversation with Detective Levine, the Defendant Eric Scarberry was never given the opportunity to waive the rights set out in Article[] 38.22 of the Texas Code of Criminal Procedure or in Miranda v. Arizona.

(internal citations omitted). The trial court concluded that Scarberry's statements to Levine were "not knowingly and voluntarily made." We did not specifically request findings from the trial court concerning whether Levine's conversation with Scarberry constituted an interrogation. *See Alford v. State*, 358 S.W.3d 647, 651 n. 6 (Tex. Crim. App. 2012) (quoting *Nichols v. State*, 810 S.W.2d 829, 831 (Tex. App.—Dallas 1991, pet. ref'd)); *cf. Greer v. State*, No. 14-18-01000-CR, 2020 WL 6439721, at *4 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) ("If a trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record.").

## II. SEARCH WARRANT

The State argues by its first issue that the trial court erred in suppressing the

6

physical fruits seized as a result of the search warrant based on the illegibility of the magistrate's signature. Scarberry concedes the trial court erred but asks this Court to remand for further findings of fact and conclusions of law concerning the validity of the search warrant.

## A.      Standard of Review

We review a ruling on a motion to suppress using a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 87–91 (Tex. Crim. App. 1997). A trial court's findings of historical facts, and determinations of mixed questions of law and fact that turn on credibility and demeanor, are afforded almost total deference if reasonably supported by the record. *Id.* We review a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor de novo. *Id.*

## B.      Analysis

The statutory exclusionary rule provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of . . . the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a). But there is an exception to that rule when "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *Id.* art. 38.23(b).

*State v. Arellano* was decided two months prior to the trial court's suppression of the evidence seized as a result of the search warrant in this case. 600 S.W.3d 53 (Tex.

7

Crim. App. 2020). In *Arellano*, the court of criminal appeals held that an illegible magistrate's signature does not render a search warrant facially invalid. *Id.* at 61; *see* TEX. CODE CRIM. PROC. ANN. art. 18.04(5) (requiring a search warrant to contain "the magistrate's name . . . in clearly legible handwriting or in typewritten form with the magistrate's signature"); *see also McClintock v. State*, 541 S.W.3d 63, 73 (Tex. Crim. App. 2017) ("In executing the warrant, [an] officer 'act[s] in objective good faith reliance upon' the warrant, as long as the warrant is facially valid."). Therefore, evidence obtained pursuant to a warrant with an illegible magistrate's signature is not inadmissible, so long as the Article 38.23(b) exception applies—i.e., if "the officer was acting in objective good-faith reliance upon a warrant based upon a neutral magistrate's determination of probable cause." *Arellano*, 600 S.W.3d at 61; *see* TEX. CODE CRIM. PROC. ANN. art. 38.23(b).

Appellee concedes that the trial court erred to the extent that it suppressed the evidence based upon the legibility of the magistrate's signature. *See Arellano*, 600 S.W.3d at 61. Nevertheless, appellee argues that the case should be remanded for further fact findings. Namely, Appellee urges that the trial court did not address whether the warrant was "illegally issued for the reason that the supporting affidavit does not reflect sufficient probable cause to justify the issuance of a search warrant."

We disagree. Here, the trial court specifically found that "there was probable cause for the search, and under the apparent authority of the Search Warrant, that said search was conducted in good faith." Therefore, there are no findings left for the trial court to make, and the evidence seized as a result of the search warrant was inappropriately suppressed. *See Arellano*, 600 S.W.3d at 61; TEX. CODE CRIM. PROC. ANN. art. 38.23(b).

8

We sustain the State's first issue.

## III.    INTERROGATION

The State argues by its second issue that Scarberry's statements were made in the absence of custodial interrogation and were therefore admissible.

### A.    Standard of Review

"The decision as to whether custodial questioning constitutes 'interrogation' under *Miranda* is a mixed question of law and fact, and we defer to the trial court's fact findings that turn on an evaluation of credibility and demeanor." *Alford*, 358 S.W.3d at 653. An issue "turns" on an evaluation of credibility and demeanor when the testimony of one or more witnesses, if believed, is always enough to add up to what is needed to decide the substantive issue. *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998). If credibility and demeanor are not important to the resolution of the issue, "whether a set of historical facts constitutes custodial interrogation under the Fifth Amendment is subject to *de novo* review because that is an issue of law: it requires application of legal principles to a specific set of facts." *Alford*, 358 S.W.3d at 653.

When challenging the admissibility of a statement on grounds that *Miranda* warnings were not given, the defendant has the initial burden of proving that his statement was the product of custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). However, the State bears a separate burden of proof at a hearing on admissibility to show by a preponderance of the evidence that the defendant's statement was given voluntarily. *Martinez v. State*, 272 S.W.3d 615, 623 (Tex. Crim. App. 2008); *Bleil v. State*, 496 S.W.3d 194, 207 (Tex. App.—Fort Worth 2016, pet. ref'd).

**B.       Applicable Law**

"The Fifth Amendment prohibits the government from compelling a criminal suspect to bear witness against himself." *Pecina v. State*, 361 S.W.3d 68, 74–75 (Tex. Crim. App. 2012) (citing U.S. CONST. amend. V). The *Miranda* Court held that "[i]n dealing with custodial interrogation, we will not presume that a defendant has been effectively apprised of his rights and that his privilege against self-incrimination has been adequately safeguarded on a record that does not show that any warnings have been given." *Miranda*, 384 U.S. at 498. Thus, *Miranda* warnings are necessary before an accused is subjected to custodial interrogation. *See Gaitan v. State*, 533 S.W.3d 19, 27 (Tex. App.— Corpus Christi–Edinburg 2016, pet. ref'd). *Miranda* defined custodial interrogation with some specificity: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

In the intervening years, this definition has changed. The *Innis* Court redefined "interrogation" to include both "express questioning" and "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). However, subsequent courts have held that "express questioning" is not interrogation unless the *Innis* "should know" test applies to the questioning at issue. *See, e.g.*, *State v. Cruz*, 461 S.W.3d 531, 536 n.15 (Tex. Crim. App. 2015) (citing *Innis*, 446 U.S. at 301–02); *United States v. Cash*, 733 F.3d 1264, 1277 (10th Cir. 2013); *United States v. Hunter*, 708 F.3d 938, 954 (7th Cir. 2013); *State v.*

*Morrisey*, 214 P.3d 708, 723 (Mont. 2009). Although we assess whether words or actions constitute custodial interrogation based on what the police "should know," this test "focuses primarily upon the perceptions of the suspect, rather than the intent of the police" to determine whether the suspect was interrogated. *Alford*, 358 S.W.3d at 653 (quoting *Innis*, 446 U.S. at 301).

The Sixth Amendment, on the other hand, guarantees a defendant the right to have counsel present at all critical stages of criminal proceedings once the adversary process has been initiated. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *United States v. Wade*, 388 U.S. 218, 227–28 (1967)). Interrogation by the State is such a critical stage. *Id.* The Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of that right is voluntary, knowing, and intelligent. *Id.* (citing *Patterson v. Illinois*, 487 U.S. 285, 292 n.4 (1988)). "[W]hen a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick." *Id.* at 786.

*Edwards v. Arizona* determined that "when an accused has invoked his right to have counsel present during custodial interrogation . . . [he] is not subject to further interrogation by the authorities until counsel has been made available," unless he initiates contact with the police. 451 U.S. 477, 484–85 (1981).[1] However, the *Montejo* Court

---

[1] In his concurrence, Justice Powell wrote,

> [F]ew cases will be as clear as this one. Communications between police and a suspect in custody are common-place. It is useful to contrast the circumstances of this case with typical, and permissible, custodial communications between police and a suspect who has asked for counsel. For example, police do not impermissibly "initiate" renewed interrogation by engaging in routine conversations with suspects about unrelated matters. And police legitimately may inquire whether a suspect has changed his mind about speaking to them without an attorney. . . .

rejected the principle that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Montejo*, 556 U.S. at 782 (overruling *Michigan v. Jackson*, 475 U.S. 625, 636 (1986)). Instead, Justice Scalia reasoned that "no reason exists to assume" that an indigent defendant who has been appointed counsel "would not be perfectly amenable to speaking with the police without having counsel present. And no reason exists to prohibit the police from inquiring." *Id.* at 789. Thus, the fact that Scarberry was represented by an attorney at the time he made his statements is immaterial for purposes of determining whether law enforcement was permitted to initiate interrogation. *See id.* Rather, "[w]hat matters for *Miranda* and *Edwards* is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation." *Id.* at 797.

Now, under *Montejo*, Fifth and Sixth Amendment rights are not necessarily discrete in the context of post-arraignment interrogation. *See id.* at 795; *Pecina*, 361 S.W.3d at 71 ("Both the Fifth and Sixth Amendment rights to counsel apply to post-magistration custodial interrogation, but each is invoked and waived in exactly the same manner—under the Fifth Amendment prophylactic *Miranda* rules."). "An uncharged suspect may invoke his Fifth Amendment right to counsel (and a defendant who has been arraigned

---

In sum, once warnings have been given and the right to counsel has been invoked, the relevant inquiry—whether the suspect now desires to talk to police without counsel—is a question of fact to be determined in light of all of the circumstances. Who "initiated" a conversation may be relevant to the question of waiver, but it is not the *sine qua non* to the inquiry. The ultimate question is whether there was a free and knowing waiver of counsel before interrogation commenced.

*Edwards v. Arizona*, 451 U.S. 477, 490–91 (1981) (Powell, J., concurring).

12

may invoke his Sixth Amendment right to counsel) for purposes of custodial interrogation when the police or other law-enforcement agents approach him *and give him his Miranda warnings.*" *See Pecina*, 361 S.W.3d at 78 (emphasis added) *see also Montejo*, 556 U.S. at 794 ("Under the *Miranda-Edwards-Minnick* line of cases . . . a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached *and given the Miranda warnings.*") (emphasis added). "That is the time and place to either invoke or waive the right to counsel for purposes of police questioning." *Pecina*, 361 S.W.3d at 78.

Under Texas law, an accused's statement "may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion." TEX. CODE CRIM. PROC. ANN. art. 38.21. An oral statement of the accused is not admissible against him unless several requirements have been met, including the administration of *Miranda*-type warnings. *Id.* art. 38.22, § 3(a). Law enforcement must administer *Miranda* warnings "immediately before custodial interrogation." *Pecina*, 361 S.W.3d at 75. "Failure to administer *Miranda* warnings creates a presumption of compulsion." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). In addition to being warned of their rights, defendants must also waive those same rights. *State v. Lujan*, 634 S.W.3d 862, 865 (Tex. Crim. App. 2021). "Only 'warned and waived' custodial statements are admissible in evidence." *Id.* (quoting *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008)). However, neither *Miranda* nor Article 38.22 preclude the admission of statements that are volunteered. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5; *Miranda*, 384 U.S. at 478.

**C.      Analysis**

There is no dispute that Scarberry was in custody when he was approached. Therefore, the relevant inquiry is whether Scarberry's statement was made in response to police interrogation.

"To be an interrogation, a statement or question must demonstrate 'a measure of compulsion above and beyond that inherent in custody itself.'" *Gaitan*, 533 S.W.3d at 29. Courts are divided on whether asking an accused if he would like to make a statement or if he would like to give his side of the story constitutes interrogation for purposes of *Miranda*. *Compare People v. Romero*, 51 N.E.3d 554, 554 (N.Y. 2016) ("Defendant's pre-*Miranda* statement, while in custody, in response to a detective's question regarding whether he would like to make a statement should have been suppressed."), *and State v. Eli*, 273 P.3d 1196, 1208–09 (Haw. 2012) ("By asking Defendant if he wanted to give his side of the story without first stating the *Miranda* warnings, Detective violated Defendant's right to be informed of his right to remain silent before making the decision and commitment to give a statement."), *with State v. Harris*, 892 N.W.2d 663, 676 (Wis. 2017) ("Detective Buchanan's inquiry into whether Mr. Harris would like to make a statement was diagnostic in nature, not inquisitorial, and the circumstances confirm that it was not the functional equivalent of an interrogation."), *and U.S. v. Wallace*, 753 F.3d 671, 673 (7th Cir. 2014) (holding that agent's pre-arrest question, "would you mind stepping out to talk about this?" was not interrogation); *see also Cruice v. State*, No. 14-96-01362-CR, 2000 WL 328197, at *3 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (mem. op., not designated for publication) (holding that officer's question, "do you want

14

to give a written statement," posed after "remind[ing] appellant that appellant was still under the statutory warnings" was "an invitation to engage in interrogation," but was not itself interrogation).

It is difficult to imagine that Levine's time-saving technique of approaching inmates and asking for a statement would be a "not uncommon" occurrence if it did not frequently yield the result allegedly obtained in this case—an incriminating response. The trial court had the discretion to disbelieve Levine's conclusory testimony that his frequent question posed to inmates would not cause them to incriminate themselves. *See State v. Ross*, 32 S.W.3d 853, 858 (Tex. Crim. App. 2000). In fact, a review of the case law indicates that this is generally the first interrogatory posed by investigators immediately after *Miranda* warnings have been administered. *See, e.g., Montoya v. State*, 810 S.W.2d 160, 173 (Tex. Crim. App. 1989) ("[Appellant] was then informed that he was under arrest for capital murder and his rights were again read to him in Spanish. Again appellant acknowledged that he understood them. The investigators then asked appellant if he would like to give a statement."); *Silva v. State*, 936 S.W.2d 721, 723 (Tex. App.—El Paso 1996, pet. ref'd) ("[Wizgell] then read the Miranda warnings to appellant and made sure she understood the warnings. Wizgell requested that appellant give her side of the story."); *see also Minjarez v. State*, No. AP-74,592, 2005 WL 3061981, at *2 (Tex. Crim. App. Nov. 16, 2005) (not designated for publication) ("After advising appellant of his rights, Carian asked whether if [sic] appellant would be willing to give a statement."); *Wilson v. State*, No. 11-11-00225-CR, 2013 WL 4715688, at *3 (Tex. App.—Eastland Aug. 30, 2013, no pet.) (mem. op., not designated for publication) ("Detective Mitchell then read Appellant his

*Miranda* rights and asked Appellant if he would like to give a statement."); *Hernandez v. State*, No. 08-06-00223-CR, 2008 WL 2402249, at *1 (Tex. App.—El Paso June 12, 2008, no pet.) (not designated for publication) ("Tabullo read him his *Miranda* rights and asked if he [was] willing to give a statement."); *Lockett v. State*, No. 01-03-01016-CR, 2005 WL 1474023, at *5 (Tex. App.—Houston [1st Dist.] June 23, 2005, no pet.) (mem. op., not designated for publication) ("[B]efore offering Mr. Lockett a chance to talk to us on video, I , at that time, read him his [legal rights], gave him the [legal rights]. Um, read to him that he had the right to remain silent. . . . And afterwards, I asked him if he understood it and if he was willing to talk on."); *Oliver v. State*, No. 2-03-525-CR, 2004 WL 2847823, at *3 (Tex. App.—Fort Worth Dec. 9. 2004, pet. ref'd) ("Officer Campbell testified that after giving appellant his second *Miranda* warning, he asked appellant if he would like to give a statement, . . ."). As the Supreme Court noted in *Innis*, "where a police practice is designed to elicit an incriminating response from the accused, it is unlikely that the practice will not also be one which the police should have known was reasonably likely to have that effect." 446 U.S. at 302 n.7.

However, while Levine's intent is relevant, it is not the primary focus of our inquiry. *See id.* at 301–302. Instead, we analyze the facts, in the light most favorable to the trial court's findings, from Scarberry's perspective to determine whether Levine should have known his words or actions were "reasonably likely to elicit an incriminating response." *See id.* In doing so, we look to see "what happen[ed] when the defendant [wa]s approached for interrogation, and (if he consent[ed]) what happen[ed] during the interrogation." *Montejo*, 556 U.S. at 797.

16

The evidence supports the trial court's finding that "Levine approached the Defendant at the Bee County jail and inquired if he would be willing to make a statement to law enforcement about these offenses." Levine's testimony varied, but there were three main components to his inquiry that were consistent: (1) Levine asked whether Scarberry "wanted to give a statement" about the burglary; (2) Levine told Scarberry he was being given "the opportunity to tell his side of the story"; and (3) Levine asked whether Scarberry wanted to speak with Behr about the burglary.

We conclude that Levine should have known his query was reasonably likely to result in an incriminating response. *See Innis*, 446 U.S. at 301–302. It is not the three components of his inquiry individually that lead us to this conclusion, but their synergistic effect upon Scarberry. Levine specifically mentioned the offense for which Scarberry was in custody and proclaimed this to be Scarberry's opportunity to "tell his side of the story," implying that the version of the story the police already had was that Scarberry was guilty. By asking Scarberry to give a statement, offering Scarberry an opportunity to give his version of events, and specifically addressing the crime of which Scarberry had been accused, Levine should have known that any actor, guilty or innocent, would have the urge to minimize his involvement. *See Eli*, 273 P.3d at 1208–09; *cf. Elstad*, 470 U.S. at 300–01, 315 (holding, in dicta, officer's initial unwarned statement that "[he] felt [Elstad] was involved in [the burglary]" "breached *Miranda*" and Elstad's response was properly suppressed). The law draws no distinction between inculpatory and exculpatory statements; both are incriminating. *See Miranda*, 384 U.S. at 476–77 ("[N]o distinction may be drawn between inculpatory statements and statements alleged to be merely

17

'exculpatory.'").

Scarberry had not requested a visit from Levine, and by all accounts, Scarberry initially declined to make any statement to him. However, Levine proceeded to ask if Scarberry instead wanted to speak with Behr about the burglary. *See Michigan v. Mosley*, 423 U.S. 96, 102–104 (1975) (police must scrupulously honor defendant's assertion of right to remain silent); *cf. Cruice*, 2000 WL 328197 at *3 ("Even if the question amounted to interrogation, appellant's negative response terminated the interrogation. Perkins asked no other questions of appellant until after appellant made his statement."). Levine's inquiry left Scarberry with the false dilemma of either giving a statement to Levine about the burglary or having to speak to Behr about it. And the reference to Behr would have special meaning to Scarberry, whose only prior attempt to speak with Behr immediately precipitated his arrest. Levine testified that Scarberry made a partial admission only "after [Levine] asked [Scarberry] if he wanted to talk to Chief Behr" regarding the burglary. The bar for what constitutes interrogation is not a high one; interrogation need only "reflect a measure of compulsion above and beyond that inherent in custody itself." *Griffith v. State*, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001). In viewing the evidence in the light most favorable to the trial court's findings, we conclude that Scarberry's statement was compelled by Levine's question. Therefore, Scarberry's statement was made in response to a custodial interrogation. *See id.*

The dissent criticizes our citation to Hawaiian authority but apparently ignores our reliance on Supreme Court precedent. *See Innis*, 446 U.S. at 302 n.7. We concede that decisions of other states are "advisory, not controlling." *Ex Parte Hernandez*, 953 S.W.2d

18

275, 281 (Tex. Crim. App. 1997). But our reliance on *Eli* is overstated by the dissent. Although *Miranda* has been whittled down throughout the years, it has never been overruled. "[V]ertical *stare decisis* is absolute . . . . In other words, the state courts . . . have a constitutional obligation to follow a precedent of [the United States Supreme] Court unless and until it is overruled by [that] Court." *Ramos v. Louisiana*, --- U.S. ----, 140 S. Ct. 1390, 1416 n.5 (2020). Therefore, when the Supreme Court dictates that a suspect may "agree to answer questions or make a statement" only after *Miranda* warnings have been given, we must apply this binding reasoning to the facts at hand. *See Miranda*, 384 U.S. at 479. When the Supreme Court states that when "police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief," we must apply this binding reasoning to the facts at hand. *See Elstad*, 470 U.S. at 317. And when the Supreme Court explains that a question will constitute an interrogation if it is "reasonably likely," to result in an incriminating response—rather than *absolutely certain* to result in such a response—we must apply this binding reasoning to the facts at hand. *See Innis*, 446 U.S. at 301–302. In doing so, we conclude that Scarberry was interrogated. *See id.*; *Elstad*, 470 U.S. at 317; *Miranda*, 384 U.S. at 479.

The dissent relies on *Batiste v. State* (which we note relies on Utah authority) for its proposition that "yes or no" questions are non-violative of *Miranda*. Our court of criminal appeals has held, in a case that does not have precedential value, that the question, "[h]ave you been shot?" was "simply a yes or no question. Neither a 'yes,' nor a 'no' would

19

have been incriminating." *See Batiste v. State*, No. AP-76600, 2013 WL 2424134, at *15 (Tex. Crim. App. June 5, 2013) (not designated for publication) (citing *State v. Riggs*, 987 P.2d 1281, 1283–84 (Utah Ct. App. 1999), *abrogated on other grounds by State v. Levin*, 144 P.3d 1096 (Utah 2006)). Unpublished opinions handed down by the court of criminal appeals "have no precedential value and *must not* be cited as authority by counsel or by a court." TEX. R. APP. P. 77.3 (emphasis added); *see also Damron v. State*, No. 2-08-399-CR, 2010 WL 1006392, at *4 (Tex. App.—Fort Worth Mar. 18, 2010, no pet.) (mem. op., not designated for publication). "Though courts may cite an unpublished opinion of the Court of Criminal Appeals to show the procedural history of the case, courts may not use an unpublished opinion from the Court of Criminal Appeals as authority of any sort, whether binding or persuasive." *Ex parte Fairchild-Porche*, 638 S.W.3d 770, 791 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see Skinner v. State*, 293 S.W.3d 196, 202 (Tex. Crim. App. 2009) (explaining that Rule 77.3 "prohibits the use of an unpublished opinion as authority of any sort, whether binding or persuasive"). Unpublished opinions and memorandum opinions by the courts of appeals in criminal cases similarly "have no precedential value." TEX. R. APP. P. 47.7(a); *see Precedent*, BLACK'S LAW DICTIONARY (11th ed. 2019).

While we are permitted to rely on unpublished opinions as an aid in developing our own independent reasoning, we are not persuaded by the reasoning in *Batiste*. As the *Batiste* court noted in its opinion, questions mandated by public safety are outside the constitutional definition of interrogation. *Batiste*, 2013 WL 2424134, at *14. Because the court of criminal appeals concluded that the question "have you been shot?" was

necessary to the officer's duty to administer aid, *see id.* at *14, the court of criminal appeals did not need to apply the *Innis* test to the facts in *Batiste*.

When a question is outside the definition of interrogation, it matters not whether that question is reasonably likely to lead to an incriminating response. *See New York v. Quarles*, 467 U.S. 649, 651, 655–56 (1984) (holding that asking about the whereabouts of a missing gun to defendant who was later charged with "criminal possession of a weapon" fell within public safety exception to *Miranda*); *Alford v. State*, 358 S.W.3d 647, 660 (Tex. Crim. App. 2012) (explaining that "language" in *Innis* "gave rise to the booking-question exception by indicating that routine administrative questions necessary for booking processing do not constitute interrogation, regardless of whether police should know that such questions are reasonably likely to elicit incriminating information"). The application of *Innis* is therefore merely dictum. *See State v. Brabson*, 976 S.W.2d 182, 186 (Tex. Crim. App. 1998). Judicial dictum, true, but dictum nonetheless. *See Dictum*, BLACK'S LAW DICTIONARY (11th ed. 2019). And unlike *Batiste*, the only law enforcement duty implicated in this case is Levine's investigative duty, which is precisely the duty that *Miranda* and its progeny touched upon. *See Miranda*, 384 U.S. at 481; *Elstad*, 470 U.S. at 309.

We also respectfully disagree that a "no" answer to the question "have you been shot?" in *Batiste* would not be an incriminating response. Batiste was stopped by police after he engaged in a "high-speed chase." *See Batiste*, 2013 WL 2424134, at *1. The car he had driven had "a great deal of blood on the . . . steering wheel and driver's seat." *Id.* The passenger side window had been shattered. *Id.* Batiste had "blood all over" him when

21

the officer asked whether he had been shot. *Id.* at *13. The circumstantial evidence clearly indicated that someone was shot in the car Batiste was driving. *See id.* at *1. If Batiste denied having been shot, the evidence would indicate that Batiste was the one who did the shooting. *See id.* We also note that there are many other "yes or no" questions that will almost always lead to an incriminating response, such as, "Did you commit the crime you stand accused of?" *See Miranda*, 384 U.S. at 476–77 (explaining that both inculpatory and exculpatory statements are "incriminating"). Scarberry may have had the ability to respond with either a "yes" or a "no" to Levine's question. Realistically, however, the answers "yes, I did it," or "no, I didn't do it" were also "reasonably likely" to flow from the question "do you want to make a statement about the burglary?" *See Innis*, 446 U.S. at 301. We have found no court of criminal appeals case that similarly addresses "yes or no" questions in the context of *Miranda* and Article 38.22.

Similarly, we are unpersuaded by *Cruice v. State*. 2000 WL 328197, at *2. In *Cruice*, unlike here, the defendant was read his statutory rights and then reminded of his statutory rights prior to his confession. *See id.* The *Cruice* court was also careful to note that "[e]ven if the question amounted to interrogation, appellant's negative response terminated the interrogation." *Id.* In response to Cruice's "no," the officer got up to leave the room. At that point, Cruice tendered an incriminating response. *Id.* The *Cruice* court held that "[l]eaving a room is not an action that [the investigator] should have known was reasonably likely to elicit an incriminating response from appellant." *Id.* Here, the facts indicate that there were multiple, unwarned questions posed to Scarberry before he confessed. And according to Levine, Scarberry's confession was made in response to his

22

express questioning related to the criminal offense, not an attempt to disengage after Scarberry asserted his right to remain silent.

Prior to the custodial interrogation, Scarberry was not warned of his rights nor did he waive those rights. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2); *Miranda*, 384 U.S. at 479 ("After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement."); *Lujan*, 634 S.W.3d at 865. Moreover, the statement was not recorded. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(1). Therefore, Scarberry's oral statement to Levine was not admissible. We conclude that the trial court did not err in suppressing Scarberry's statement.

We therefore overrule the State's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment suppressing Scarberry's oral statement to police. We reverse the trial court's suppression of evidence stemming from the validly issued search warrant, and we remand for further proceedings consistent with this opinion.

GINA M. BENAVIDES
Justice

Dissenting Memorandum Opinion by Justice Tijerina.

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
9th day of June, 2022.

23